No. 21-5723

# In the
# United States Court of Appeals
## for the Sixth Circuit

BLISS COLLECTION, LLC, d/b/a bella bliss,

*Plaintiff-Appellant,*

v.

LATHAM COMPANIES, LLC, d/b/a little english,

*Defendant-Appellee.*

---

Appeal From The United States District Court
For The Eastern District of Kentucky, Central Division (Lexington), No. 5:20-cv-00217.
The Honorable **Claria Horn Boom**, Judge Presiding.

## BRIEF OF PLAINTIFF-APPELLANT

Jaci L. Overmann
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
(513) 977-8200

Attorney for Plaintiff-Appellant
Bliss Collection, LLC, d/b/a bella bliss

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number:  21-5723            Case Name:  Bliss Collection v. Latham Company

Name of counsel:  Jaci L. Overmann

Pursuant to 6th Cir. R. 26.1,  Bliss Collection, LLC, d/b/a bella bliss
                                              *Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ June 7, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jaci L. Overmann
Dinsmore & Shohl, LLP, 255 E. 5th St.
Suite 1900, Cincinnati OH  45202

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS......................................................................... ii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ..............................................1

STATEMENT OF JURISDICTION............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .................................2

STATEMENT OF THE CASE ...............................................................2

    A.    Bella Bliss's Complaint And Amended Complaint ............................3

        1.    Bella Bliss's Trademark Infringement Allegations ...................5

        2.    Bella Bliss's Trade Dress Infringement Allegations ...............10

    B.    The District Court's Initial Order.......................................15

    C.    The District Court's Second Order .....................................17

SUMMARY OF ARGUMENT ...............................................................20

ARGUMENT ...................................................................................21

I.    APPLICABLE STANDARDS ..........................................................21

    A.    This Court Reviews A District Court's Grant Of A Motion to Dismiss *De Novo* ............................................................21

    B.    The Federal Rules Of Civil Procedure Require Only Notice Pleading & Inferential Allegations Suffice To Meet This Standard ..................................................................21

II.    THE AMENDED COMPLAINT SUFFICIENTLY PLEADED A CLAIM FOR TRADEMARK INFRINGEMENT .......................................23

A. Bella Bliss Explicitly Pleaded Facts Supporting At Least Six *Frisch* Likelihood Of Confusion Factors, Including Actual Confusion ........................................................................26

B. The District Court Improperly Determined The Import Of The Facts Underlying The Pleadings At The Motion To Dismiss Phase...............................................................................31

III. BELLA BLISS ADEQUATELY PLEADED A CLAIM FOR TRADE DRESS INFRINGEMENT ...........................................................35

A. Bella Bliss Adequately Pleaded That Its Claimed Trade Dress Was Non-Functional....................................................................38

B. The District Court Did Not Read The Amended Complaint As A Whole Or Resolve Inferences In Bella Bliss's Favor With Respect to Non-Functionality ...........................................................43

C. Bella Bliss Adequately Pleaded That Its Trade Dress Is Distinctive & That Little English's Trade Dress Is Confusingly Similar To Its Own ...................................................................................47

CONCLUSION ...............................................................................51

CERTIFICATE OF SERVICE ................................................................52

CERTIFICATE OF COMPLIANCE WITH FED R. APP. P. 32(a)(7) .................53

ADDENDUM ...................................................................................54

# TABLE OF AUTHORITIES

## Cases

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*,
  280 F.3d 619 (6th Cir. 2002) ................................................................35, 49

*ADA v. Delta Dental Plans Ass'n*,
  126 F. 3d 977 (7th Cir. 1997) .......................................................................42

*Alfwear, Inc. v. Kulkote, LLC*,
  No. 2:19-cv-00027-CW-JCB, 2020 U.S. Dist. LEXIS 125751
  (D. Utah July 15, 2020) .................................................................................31

*AMD Southfield Mich. Ltd. P'ship v. Mich. Open MRI LLC*,
  337 F. Supp. 2d 978 (E.D. Mich. 2004) .......................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................22, 41, 43

*B. & V. Distrib. Co. v. Dottore Co., LLC*,
  278 F. App'x 480 (6th Cir. 2008)..................................................................23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................21, 34

*Cahoo v. SAS Analytics Inc.*,
  912 F.3d 887 (6th Cir. 2019) ...........................................................23, 32, 44

*Capital Grille Holdings, Inc. v. Historic Hotels of Nashville, LLC*,
  448 F. Supp. 3d 819 (M.D. Tenn. 2020) ...................................22, 29, 30, 33

*Conley v. Gibson*,
  355 U.S. 41 (1957).................................................................................21, 44

*Cortez v. Prince George's County*,
  31 F. App'x 123 (4th Cir. 2022) ..................................................................44

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
  109 F.3d 275 (6th Cir. 1997) ........................................................................24

*Ford Motor Co. v. Autel US Inc.*,
  No. 14-13760, 2016 U.S. Dist. LEXIS 85875
  (E.D. Mich. July 1, 2016) .............................................................................22

*Forney Indus., Inc. v. Daco of Missouri, Inc.*,
  835 F.3d 1238 (10th Cir. 2016) ...................................................................37

*Frisch's Rest., Inc. v. Elby's Big Boy of Steubenville, Inc.*,
    670 F.2d 642 (6th Cir. 1982) ................................................................*passim*

*Garnier-Theibaut, Inc. v. Castello, 1935 Inc.*,
    No. PWG-17-3632, 2018 U.S. Dist. LEXIS 83294
    (D. Md. May 17, 2018) ................................................................................42

*GMC v. Lanard Toys, Inc.*,
    468 F. 3d 405 (6th Cir. 2006) ..........................................................35, 36, 43

*Gold Crest, LLC v. Project Light, LLC*,
    525 F. Supp. 3d 826, 848 (N.D. Ohio 2021) ................................................22

*Golden Star Wholesale, Inc. v. ZB Importing, Inc.*,
    531 F. Supp. 3d 1231 (E.D. Mich. 2021) ..............................................26, 27

*Good L Corp. v. Fasteners for Retail, Inc.*,
    No. 3:18-cv-00489, 2019 U.S. Dist. LEXIS 53093
    (M.D. Tenn. Mar. 28, 2019) ....................................................................36, 43

*Gray v. Meijer, Inc.*, 295 F.3d 641 (6th Cir. 2002) ................................................25

*Grubbs v. Sheakley Grp., Inc.*,
    807 F.3d 785 (6th Cir. 2015) ..................................................................22, 26

*Hensley Mfg. v. ProPride Inc.*,
    579 F.3d. (6th Cir. 2009) ................................................................*passim*

*Innovation Ventures, LLC v. N2G Distrib.*,
    763 F.3d 524 (6th Cir. 2014) ......................................................................24

*In re Forney Indus.*,
    955 F.3d 940 (Fed. Cir. 2020) ....................................................................37

*In re Owens-Corning Fiberglas Corp.*,
    774 F.2d 1116 (Fed. Cir. 1985) ..................................................................38

*Kaldy v. Urshow.tv, Inc.*,
    No. 2:16-CV-54, 2017 U.S. Dist. LEXIS 3153
    (E.D. Tenn. Jan. 10, 2017) ....................................................................25, 34

*Leapers, Inc. v. SMTC, LLC*,
    No. 14-CV-12290, 2014 U.S. Dist. LEXIS 140622
    (E.D. Mich. Oct. 3, 2014) ..............................................................42, 46, 47

*Maker's Mark Distillery, Inc. v. Diageo N. Am.*,
    679 F.3d 424 (6th Cir. 2012) ..........................................................25, 36, 40

v

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)...................................................................23, 32

*Mike Vaughn Custom Sports, Inc. v. Piku*,
    15 F. Supp. 3d 723 (E.D. Mich. 2014) ............................45, 46, 47

*New NGC, Inc. v. Alpinebay, Inc.*,
    No. 19 C 3978, 2019 U.S. Dist. LEXIS 236470
    (N.D. Ill. Sept. 26, 2019) ................................................................31

*Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*,
    687 F. App'x 429 (6th Cir. 2017)..............................................25, 26

*Pan v. Kohl's Dep't Stores, Inc.*,
    No. 2:12-CV-01063, 2013 U.S. Dist. LEXIS 130616
    (S.D. Ohio Sept. 12, 2013) ............................................................41

*Ready Capital Corp. v. Ready Capital Corp.*,
    No. 19-13536, 2020 U.S. Dist. LEXIS 86567
    (E.D. Mich. May 18, 2020) ............................................................29

*Rodriguez v. Tenn. Laborers Health & Welfare Fund*,
    89 F. App'x. 949 (6th Cir. 2004)..................................................19

*Rosta AG v. Lovejoy, Inc.*,
    No. 1:16-cv-199, 2017 U.S. Dist. LEXIS 129773
    (W.D. Mich. Mar. 29, 2017)..........................................................38

*Ryan v. Blackwell*,
    979 F. 3d 519 (6th Cir. 2020) .................................................*passim*

*Servpro Intell. Prop., Inc. v. AdvantaClean Sys., Inc.*,
    No. 17-cv-0258-JPM, 2017 U.S. Dist. LEXIS 226037
    (M.D. Tenn. June 23, 2017)...........................................................27

*Thomas & Betts Int'l LLC v. Burndy LLC*,
    No. 2:14-cv-02296, 2015 U.S. Dist. LEXIS 139027
    (W.D. Tenn. Oct. 13, 2015)...........................................................43

*Top Tobacco v. Fantasia Distrib., Inc.*,
    101 F. Supp. 3d 783 (N.D. Ill. 2015)............................................31

*Tovey v. Nike, Inc.*,
    No. 1:12CV448, 2013 U.S. Dist LEXIS 16084
    (N.D. Ohio Feb. 6, 2013)...............................................................29

*Traffix Devices v. Mktg. Displays*,
    532 U.S. 23 (2001)...........................................................36, 38, 40

*Tumblebus, Inc. v. Cranmer*,
　　399 F.3d 754, 762 (6th Cir. 2005) ...............................................49

*Vapor Spot, LLC v. Breathe Vape Spot, LLC*,
　　No. CV 15-02110, 2015 U.S. Dist. LEXIS 188008
　　(C.D. Cal. Sept. 15, 2015) ...........................................................30

*Waggoner v. Battle Creek*,
　　No. 1:12-CV-827, 2013 U.S. Dist. LEXIS 51313
　　(W.D. Mich. Apr. 10, 2013) ........................................................33

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
　　529 U.S. 205 (2000)..............................................................35, 49

## **Other Authorities**

32 Federal Procedure, Lawyer's Edition § 74:507 (2008) .............................. 18, 25

Charles Allen Wright & Arthur R. Miller,
　　Federal Practice and Procedure § 1286 (2d ed. 1990) ..................................44

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Bliss Collection, LLC ("*bella bliss*") requests oral argument on the basis that it may aid the Court in its consideration of the issues raised in this appeal.  Although the facts are straightforward, the case involved multiple rounds of briefing below and this Court could benefit from oral argument to directly address those questions the Court may have after reviewing the record evidence.  Oral argument is, therefore, necessary and appropriate.

## STATEMENT OF JURISDICTION

*bella bliss* commenced this action against little english seeking relief for various forms of intellectual property-related misconduct.  (Complaint, RE 1.)  As is relevant here, *bella bliss* subsequently filed an Amended Complaint containing its full allegations in support of claims for trademark infringement, trade dress infringement, unfair competition, false designation of origin, and copyright infringement, variously arising under Federal and Kentucky law.  (Am. Compl., RE 11.)

On March 16, 2021, the District Court issued an Order that granted, in part, little english's motion to dismiss the Amended Complaint insofar as it held that *bella bliss* had failed to state claims for trade dress infringement and copyright infringement.  (Dec. & Initial Or., RE 22.)  Upon a motion for reconsideration by little english, the District Court issued another Order, effectively dismissing the Amended Complaint in entirety for failure to state a claim for trademark infringement, and, thus, also for false

1

designation of origin and unfair competition.  (Recons. Op., RE 36.)  In this final Order, the Court made the decision final, thereby providing this Court with jurisdiction over the appeal.  (*Id.*)

On July 28, 2021, *bella bliss* filed a timely Notice of Appeal.  (Notice of App., RE 39.)

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court improperly held that the Amended Complaint failed to state a claim for trademark infringement under the Lanham Act and the common law of Kentucky where *bella bliss* specifically pleaded and provided evidence that the parties' respective trademarks were similar, that customers were actually confused about the source of the parties' goods, and multiple other relevant facts weighing in favor of a likelihood of confusion.

2.    Whether the District Court improperly held that the Amended Complaint failed to state a claim for trade dress infringement where the District Court and little english were on notice, based on the totality of the Amended Complaint, that *bella bliss*'s trade dress was non-functional and distinctive, as well as the fact that little english's own trade dress was confusingly similar to *bella bliss*'s.

## STATEMENT OF THE CASE

This appeal presents a simple issue: did *bella bliss* provide little english fair notice of *bella bliss*'s claims for trademark infringement, trade dress infringement, unfair

competition, or false designation of origin and the grounds upon which they rest?  The primary issue as to *bella bliss*'s trademark infringement claim is whether it adequately pleaded a likelihood of confusion.  little english unquestionably had fair notice of this claim and the grounds upon which it rests, particularly since *bella bliss* explicitly pleaded and provided evidence that actual customer confusion had already taken place.  Although *bella bliss* adequately pleaded all elements of trade dress infringement, the primary issue here is whether *bella bliss* adequately pleaded non-functionality.  little english had fair notice of this claim and the grounds upon which it rests, particularly since *bella bliss* explicitly pleaded and explained that its product design trade dress was the result of artistic choices and that its color-based trade dress was used purely as a source identifier and that it had established secondary meaning in the eyes of consumers.  Given *bella bliss*'s extensive allegations contained within *bella bliss*'s 61-page complaint and corresponding 15 exhibits, the District Court improperly decided the underlying motion to dismiss on these claims.

## A.    *Bella Bliss*'s Complaint and Amended Complaint

*bella bliss* is a high-end infant, children, and women's boutique, which was founded with a mission of empowering women in poverty in South America by providing them with jobs and teaching them trade skills to produce clothing featuring unique, hand-made pieces.  (Am. Compl. RE 11, PageID # 422.)  *bella bliss* was formed in 1999 by Ms. Elizabeth (Lisa) McLean, Ms. Shannon Latham, and Ms. Jennifer

3

Vernooy. (*Id.*)  After a series of differences of opinion with the other members of *bella bliss*, Ms. Latham was asked to leave the company in late 2003 and was compensated with two-hundred fifty times her initial investment in exchange for her shares of the company. (*Id.*, PageID # 436.)  Shortly thereafter, in September 2004, Ms. Latham founded little english as a direct competitor to *bella bliss*. (*Id.*)

In recent years, having spent decades investing and building its brand, *bella bliss* had serious concern for its intellectual property when it increasingly discovered instances of customers mistaking little english's products for its own. (*See, e.g.*, Exhs. Annexed to Am. Compl., RE 11-10, PageID # 911-12 & RE 11-12, Page ID # 920-22.) Upon becoming aware of these instances of actual confusion, *bella bliss* made the logical connection to little english's conduct—going back to at least 2010—such as soliciting *bella bliss* customers and even employees with friend requests on Facebook in order to create the false impression of an association between the two companies. (Am. Compl. RE 11, PageID # 466 & Exh. "N" annexed thereto, RE 11-14, PageID # 925-26.)  So concerned about these activities, among others, *bella bliss* sent a letter to little english on May 11, 2020, wherein it outlined little english's various forms of intellectual property-related misconduct and the multiple instances of actual confusion that raised *bella bliss*'s concern. (Am. Compl. RE 11, PageID # 466-67 & Exh. "O" annexed thereto, RE 11-15, PageID # 928-31.)  little english responded by denying all wrongdoing, and accused *bella bliss* of maliciously and spitefully interfering with little

english's business.  (Am. Compl. RE 11, PageID # 467 & Exh. "P" annexed thereto, RE 11-16, PageID # 949-952).

Thus, convinced that little english was unwilling to cease and desist its ongoing intellectual property-related misconduct, on May 22, 2020, *bella bliss* commenced this action by filing a Complaint against little english in the U.S. District Court for the Eastern District of Kentucky.  (Compl., RE 1.)  *bella bliss* then filed an Amended Complaint on July 14, 2020 that included the full trademark and trade dress infringement allegations primarily here at issue.  (Am. Compl., RE 11.)  *bella bliss*'s 61-page Amended Complaint was supported by 15 documentary exhibits that helped elucidate little english's various forms of intellectual property-related misconduct, including trademark and trade dress infringement, and also unfair competition, false designation or origin, and copyright infringement, variously arising under Federal and Kentucky law. (*Id.* & Annexed Exhs., RE 11-1 to 11-16.)

## 1.    *Bella Bliss*'s Trademark Infringement Allegations

*bella bliss* specifically pleaded in support of its trademark infringement-related claims at least six factors weighing in favor of a likelihood of confusion: (1) the strength of its own marks (Am. Compl., RE 11, PageID # 423-24, 430-33); (2) the similarity of the parties' marks (*id.*, PageID # 437, 440-41); (3) little english's progression of logos and inferred intent in adopting its own marks (*id.*); (4) instances of actual consumer confusion (*id.*, PageID # 465-66 & Annexed Exhs., RE 11-10 to 11-14); (5) the similarity

of the parties' products (*id.*, PageID # 442); and (6) the identity of the parties' marketing channels. (*id.*, PageID # 436-37, 441-42, 466.)

*bella bliss's "B & Design Trademark"*

For example, *bella bliss* thoroughly described the nature and strength of its signature "B & Design" logo and branding.  (*Id.*, PageID # 430-33.)  On October 23, 2007, *bella bliss* successfully registered its B & Design logo as a trademark with the U.S. Patent and Trademark Office in connection with the sale of children's clothing (U.S. Reg. No. 3,321,192).  (*Id.*, PageID # 431.)



(image from U.S. Reg. No. 3,321,192.).[1]  *bella bliss* further explained that it had a pending trademark application for its "BELLA BLISS B & Design" that claims its unique light blue color (U.S. Serial No. 88900724).  (*Id.*, PageID # 430.)

*The Similarity Of The Marks & Little English's Intent*

---

[1] *bella bliss* alleged that the B & Design trademarks were both inherently distinctive and had acquired secondary meaning, having been used in commerce for nearly two decades. (*Id.*, PageID # 430-33.)

The Amended Complaint unequivocally alleged that *bella bliss*'s and little english's trademarks were similar, and that this similarity was a result of little english's willful misconduct based upon changes to its logo to progressively look closer and closer to the distinct *bella bliss* color scheme and logo.  (Am. Compl., RE 11, PageID # 440-41.)  Critically, *bella bliss* alleged that "[w]hen seen on a clothing garment tag [] [the parties' respective] <u>logos appear nearly identical</u> in nature and are <u>very likely to cause consumer confusion</u> between the brands.  Indeed, instances of consumer confusion are already occurring between the two companies."  (*Id.*, PageID # 442) (emphasis supplied.)

In support of its allegations of misconduct, *bella bliss* displayed little english's original company logo, as it had appeared in 2005, and then explained how, with multiple revisions, little english's logo became progressively more similar to *bella bliss*'s.  (*Id.*, PageID # 437, 440-41.)



Specifically, little english changed its logo, and in doing so (1) deliberately changed to bliss Blue (having switched from a previously darker shade of blue) and (2) intentionally changed to a similar lowercase lettering pattern similar to *bella bliss*, and that "with each

7

revision to its logo, Little English designs its brand to look closer and closer to the distinctive and unique color scheme and logo used by *bella bliss*." (*Id.*, PageID # 440-42.)  Indeed, the two companies' logos juxtaposed directly is shown on the next page:



| bella bliss's b & Design Mark | Little English's Logo |



| bella bliss's b & Design Mark | Little English's Script Logo |

(*Id.*, PageID # 441.)

*Actual Customer Confusion*

Crucially, *bella bliss* pleaded that little english's misconduct had already caused multiple instances of actual customer confusion as to the source of *bella bliss*'s and little english's respective goods. (*Id.*, PageID # 465-66.)  In support of these allegations, *bella bliss* provided five exhibits of evidence in support of actual consumer confusion as to the source of the parties' goods and whether there was a relationship between the parties. (*Id.* & Annexed Exhs., RE 11-10 to 11-14.)  These examples were supported by evidence including (1) multiple screenshots of social media posts showing customers incorrectly

8

"tagging" *bella bliss* as the source of a little english products; (2) a screenshot of social media comments clearly confusing the parties; (3) a screenshot of a social media post by a clothing boutique with whom both parties work, incorrectly tagging *bella bliss* as the source of a little english product; and (4) a screenshot of social media comments incorrectly stating that *bella bliss* and little english are "owned by the same lady and her daughter." (*Id.*)

## Similarity Of The Products

*bella bliss* alleged that little english had engaged in a repeated pattern of infringement that included copying *bella bliss*'s product designs, such that little english would release "strikingly similar designs a year or season after the launch of a product line by *bella bliss*." (*Id.*, PageID # 442.)  little english's efforts included  "creating confusingly similar products and using confusingly similar logos to generate initial interest confusion and drive customers to Little English in place of *bella bliss*." (*Id.*, PageID # 466.)  Of course, as will be shown in more detail *infra*, the similarity of the products at issue is not in dispute, and these examples are provided to illustrate that the alleged intellectual property-related misconduct is widespread and goes beyond any single product or category of product.

## Identical Marketing Channels

*bella bliss* alleged that the parties use identical marketing channels, and, indeed, that little english has been persistent in its efforts to utilize identical marketing channels

9

as *bella bliss* since its very founding. (*Id.*, PageID # 436-37.) little english, upon founding itself as a direct competitor to *bella bliss*, had featured its products in a showroom known for featuring *bella bliss* items. (*Id.*) The Amended Complaint also explained that little english intentionally targeted *bella bliss* customers and subscribers by sending them "friend requests" in order to divert business from *bella bliss* and trade on its customer goodwill. (*Id.*, PageID # 466.) In addition, *bella bliss* specifically alleged that, in little english's direct-to-consumer website (similar to *bella bliss*'s own), it infringed upon both *bella bliss*'s trademarks and trade dress. (*Id.*, PageID # 441-42.)

## 2.   **Bella Bliss's Trade Dress Infringement Allegations**

### *bella bliss's Signature Bliss Blue Color*

As to *bella bliss*'s signature light blue color, the Amended Complaint alleged that, "[s]ince its formation, bella bliss has always utilized its signature light blue color in its logo and overall branding." (*Id.*, PageID # 423.) Of course, this means that *bella bliss*'s use of bliss Blue dates back to Ms. Latham's time with the company. (*Id.*, PageID # 436.) Specifically, *bella bliss* alleged that the B & Design Trademarks "utilize a signature light blue color, Pantone color 13-4220, Artic Paradise (alternative Pantone colors listed as 291 CP, 112-3 C, 442-U, and 115-4 U) ("bliss Blue")." (*Id.*, PageID # 433.) *bella bliss* alleged that it expended time and resources achieving the bliss Blue color it desired, and that, since at least 2001, it had extensively and repeatedly used the bliss Blue color as an identifier of the source of its goods on its products, website, social

media, and product packaging, *inter alia*. (*Id.*, PageID # 433-34.)  *bella bliss* continued by alleging that it has acquired secondary meaning in bliss Blue, explaining that it had been used in commerce since at least 2001 and, due to extensive advertising and use in *bella bliss*'s overall branding in multiple marketing channels, consumers recognize bliss Blue as a source identifier.  (*Id.*, PageID # 423, 434.)  Similarly, it alleged that "Bliss Blue Trade Dress is strong and has also become famous and widely known and recognized as symbols of unique and high quality garments throughout the state of Kentucky and the whole United States."  (*Id.*)

*bella bliss's Product Design Trade Dress*

*bella bliss* alleged that "Bella bliss's clothing also features signature looks such that consumers can readily identify *bella bliss* as the source.  Each design is carefully crafted, spending extensive time and resources to create signature, exclusive and distinctive looks."  (*Id.*, PageID # 423.)  "Each catalog showcases a curated collection produced four times a season. The collections have a coordinated aesthetic that is created with extreme attention to details so that each Pattern, Print, and Applique on the *bella bliss* Products is cohesive and tells a unified story."  (*Id.*, PageID # 424.)

Specifically, as to its "Mirabelle Swimsuit" product, *bella bliss* provided the following images for context:



(*Id.*, PageID # 435.)   In addition, *bella bliss* explained that the Mirabelle Swimsuit featured "an exaggerated and *aesthetic* scoop neckline" and that its various other features were uncommon, particularly in children's swimwear, so the Mirabelle Swimsuit is a signature of *bella bliss* that is instantly recognizable to customers.  (*Id.*, PageID # 435) (emphasis supplied.)

*bella bliss* also alleged that is has trade dress rights in a number of additional unique designs (described and pictured as reproduced below in the Amended Complaint) (*see id.*, PageID #462-64), including:

| "Custom Jungle Print" | "Color-Blocked Gingham Swim Trunks" | "Shep Bubble" Romper | "Sailor Bubble" | Eloise Blouse and Contrast Stitching Jumper |
|---|---|---|---|---|

*Little English's Alleged Trade Dress-Related Misconduct*

In addition to the aforementioned allegations regarding little english's intentional adoption of bliss Blue in its own trademarks, *inter alia*, *bella bliss* also alleged that "Little English utilizes bliss Blue throughout its website and social media accounts." (*Id.*, PageID # 460.)   As to the Mirabelle swimsuit, *bella bliss* visually showed photographs, reproduced in part below, of its own design next to photographs of little english's confusingly similar design, and explained in detail why the designs were similar and why consumer confusion as to source was likely to result.  (*Id.*, PageID # 460-61.)



Similarly, *bella bliss* visually showed its other product design trade dresses next to little english's confusingly similar ones and explicitly stating that customers were likely to be confused as to the source of these designs.  (*Id.*, PageID # 462-65.)

*Bella Bliss Repeatedly Alleged That Its Product Design Trade Dress Is The Result Of Artistic Choices, Not Functionality Concerns*

The Amended Complaint repeatedly identifies *bella bliss*'s trade dress as being the result of artistic choices, including the following seven distinct examples from the Amended Complaint:

- *bella bliss* identified the features of its Mirabelle Swimsuit as being rare in children's swimsuits, and alleged that these "*signature, artistic choices*" are replicated in little english's infringing product.  (*Id.*, PageID # 461) (emphasis supplied.)

- *bella bliss* identified the particular features of its Custom Jungle Print that comprise its trade dress as "a compilation of hand-drawn designs" comprised of a "unique combination of jungle animals [that] create a *visually-appealing* Print with yellow, orange, and blue jungle animals and palm trees," and alleged that the "*artistic choices*" embodied in the design are replicated in Defendant's accused product.  (*Id.*, PageID # 462) (emphases supplied.)

- *bella bliss* explained the particular features of its Color-Blocked Gingham Swim Trunks that comprise its trade dress—"a pink gingham waistband, light blue gingham right short leg, and light green gingham left short leg"—and alleged that the "*artistic choices*" embodied in that design were replicated in little english's accused product. (*Id.*, PageID # 462-63) (emphasis supplied.)

- As to *bella bliss*'s Shep Bubble romper, *bella bliss* alleged that its trade dress comprised "an emphasized 'Peter Pan' collar trimmed in white piping with two white buttons and white stitching with a loose overall fit," and alleged that the "*artistic choices*" embodied in the design are replicated in little english's accused product.  (*Id.*, PageID # 463) (emphasis supplied.)

14

- Describing its Sailor Bubble, *bella bliss* alleged that its trade dress constituted "contrasting outlining and visible buttons at the top and sides," and alleged that the "*artistic choices*" embodied in the design are replicated in little english's accused product. (*Id.*, PageID # 463-64) (emphasis supplied.)

- *bella bliss* identified the particular features of its Eloise Blouse and Jumper that comprise its trade dress as a blouse with "a unique small floral pattern" and a jumper with "distinctive stitching in a contrasting color, with straps across the front of the jumper in a contrasting color and drop-down piping connecting to the side straps," and alleged that the "*artistic choices*" embodied in the design are replicated in little english's accused product. (*Id.*, PageID # 464-65) (emphasis supplied.)

- *bella bliss* alleged that its textile fabric designs (*e.g.*, the Jungle Print and gingham identified above as trade dress), are carefully curated to create an "aesthetically pleasing" collection, and that any embroidery or decorative fabric designs attached to the clothing are the result of "artistic choices," including details and color, are crafted to create an "aesthetic" consistent with *bella bliss*'s brand. (*Id.*, PageID # 423) (emphasis supplied.)

### B.    The District Court's Initial Order

On August 14, 2020, little english filed a "Motion to Dismiss Plaintiff's First Amended Complaint" pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss, RE 14, PageID # 971-74.) As is relevant here, little english argued that (1) *bella bliss* failed to state a claim for trademark infringement (Mem. in Supp., RE 14-1, PageID # 989-90); (2) *bella bliss* failed to state a claim for trade dress infringement (*id.*, PageID # 990-98); and (3) *bella bliss*'s claims for unfair competition and false designation of origin necessarily fail with the trademark and trade dress infringement claims (*id.*, PageID # 999-1000). *bella bliss* opposed each of these arguments. (*bella bliss* Opp., RE 20, PageID # 1194-1202.)

15

On March 16, 2021, the District Court issued an Order (the "Initial Order") that, as relevant here, denied little english's motion to dismiss *bella bliss*'s trademark infringement claims and granted little english's motion to dismiss *bella bliss*'s trade dress and copyright infringement claims. (Initial Or., RE 22, PageID # 1240.)  As to the trademark infringement claims, the District Court recognized that determining "such a 'foundational fact' [as the likelihood of confusion] is inappropriate at [the motion to dismiss phase]."  (Initial Or., RE 22, PageID # 1235-36) (citation omitted.)  In other words, the District Court declined little english's invitation to dismiss the complaint explaining that "[p]laintiff has alleged likely consumer confusion due to the supposed similarity between the marks, has stated a few specific instances of plausible consumer confusion, and has alleged that Defendant's intent in using the disputed mark is to cause confusion among consumers."  (*Id.*, PageID # 1236.)  Given its finding that the trademark claims should move forward, the District Court briefly explained that, since *bella bliss*'s claims for false designation of origin and unfair competition rely on the same tests, *bella bliss*'s claims for false designation of origin and unfair competition should, likewise, not be dismissed.  (*Id.*, PageID # 1239.)

The District Court dismissed the trade dress claims solely on the ground that *bella bliss* had failed to specifically plead that its trade dress was non-functional.  (*Id*, PageID. # 1237.)  The court concluded that *bella bliss* had failed to plead that its trade dress was non-functional, concluding that "[o]nly with respect to its copyright claims does Plaintiff

allege that the 'artistic choices' of each particular design 'serve no function.'" (*Id.*, PageID # 1237-38.)

### C.    The District Court's Second Order

On April 21, 2021, little english moved to reconsider the Initial Order.  (Mot. for Recons., RE 28, PageID # 1284.)  little english's only opening argument in support of its reconsideration motion was that *Hensley Mfg. v. ProPride Inc.*, 579 F.3d. 603 (6th Cir. 2009) authorized the District Court to decide that the trademarks at issue were dissimilar as a matter of law, such that there can be no confusion.  (*Id.*, PageID # 1287-88.)

In opposition, *bella bliss* argued that little english's motion for reconsideration was nothing but an attempt at a second bite of the apple, and that little english did not even attempt to identify—let alone meet—the proper standard for reconsideration. (Recons. Opp., RE 33, PageID # 1315-17.)  *bella bliss* charged that little english "did not articulate any manifest error or law of fact, newly discovered evidence, nor a change in the law to support its motion." (*Id.*, PageID # 1317.)

little english then argued, for the first time, in reply, that the exhibits supporting *bella bliss*'s claims for trademark infringement were only evidence that the "*clothing itself* looks similar enough so that individual items could be mistaken as coming from either company." (Recons. Reply, RE 34, PageID # 1328) (emphasis in original.)

On June 28, 2021, the District Court issued a Memorandum Opinion and Order (the "Reconsideration Opinion), in which it actually explained that, contrary to little english's primary argument, *Hensley* was distinguishable and did not support dismissal. (Recons. Op., RE 36, Page ID # 1344-46.)  In fact, in explaining its reasoning in the Initial Order, the District Court noted that *Hensley* acknowledged the black letter proposition that likelihood of confusion is a question of fact, inappropriately determined on a motion to dismiss stating:

> *Hensley* held that "likelihood of confusion is generally a question of fact." *Hensley*, 579 F.3d at 613 (quoting 32 Federal Procedure, Lawyer's Edition § 74:507 (2008)). Therefore, because determining whether the two marks were likely to cause confusion was a "foundational fact" that was inappropriate to determine on a motion to dismiss, the Court declined to do so. [R. 22 p. 15]

(*Id.*, PageID # 1345-46.)  The District Court further explained its Initial Order:

> The Court then went on to find that "Plaintiff has alleged likely consumer confusion due to the supposed similarity between the marks, has stated a few specific instances of plausible consumer confusion, and has alleged that Defendant's intent in using the disputed mark is to cause confusion among consumers." [Id.] Construing these allegations in the light most favorable to the Plaintiff, the Court found Plaintiff had alleged sufficient facts to state a claim for trademark infringement. [Id.]

(*Id.*, PageID # 1346.)  In any event, though, the District Court then went on to conclude that there was an "error" in its analysis by previously declining to dismiss *bella bliss*'s trademark infringement claims since *bella bliss*'s allegations of actual consumer

18

confusion "do not relate to the parties' *trademarks*," but, rather, entirely due to little

english's offer for sale of similar "*products*."  (Recons. Op., RE 36, PageID # 1344, 46-

49) (emphasis in original.)

Factually, the District Court conceded that *bella bliss* had, in fact, alleged that (1)

when seen on a clothing garment tag, the parties' respective logos look nearly identical

and this is very likely to cause confusion, and that (2) instances of consumer confusion

were already actually occurring as to the source of the parties' respective goods.  (*Id.*,

PageID # 1347.)  The District Court also acknowledged that *bella bliss* had, indeed,

provided images of the parties' respective trademarks in the body of the Amended

Complaint.  (*Id.*)

Legally, the District Court acknowledged that "[t]raditionally, courts will find

justification for reconsidering interlocutory orders when there is . . . a need to correct a

**clear error** or **prevent manifest injustice**" and that this should be used "sparingly."

(Memo. Op., RE 36, PageID # 1342) (emphasis supplied) (quoting *Rodriguez v. Tenn.*

*Laborers Health & Welfare Fund*, 89 F. App'x. 949, 959 (6th Cir. 2004).)  Never stating

what "clear error" or "manifest injustice" needed preventing, the District Court then

reversed itself merely by identifying "an error" in its analysis."  (Recons. Op., RE 36,

PageID # 1346.)

Therefore, only after six rounds of briefing (*see* RE 14, 20, 21, 28, 33, 34)—and

"only through an argument raised over a single page in its reply brief did little english

19

hit upon an argument that resonated with the Court" (Mag. Stinnett Rep. & Rec., RE 53, PageID # 1566)[2]—such that the District Court made a final order dismissing the entirety of the case from its docket.

************************

*bella bliss* filed a timely Notice of Appeal on July 28, 2021.  (Notice of Appeal, RE 39, PageID # 1466).

## <u>SUMMARY OF ARGUMENT</u>

*bella bliss*'s Amended Complaint provided little english fair notice of *bella bliss*'s claims for trademark and trade dress infringement (and the related claims for unfair competition and false designation of origin)[3] and the grounds upon which these claims rest.  *bella bliss's* Amended Complaint easily meets the standard for notice pleading set by the Federal Rules of Civil Procedure and relevant case law.  Accordingly, the District Court erred in dismissing *bella bliss*'s claims for failure to state claims under Rule 12(b)(6).  In short, the District Court overstepped its proper role on a motion to dismiss,

---

[2] Magistrate Stinnett continued: "And even then, the argument was that although bella bliss had repeatedly asserted consumer confusion relevant to its copyright design claims, it failed to do so in its section discussing its trademark claim."  (*Id.*)

[3] Indeed, the District Court explained that *bella bliss*'s purported failure to adequately plead a likelihood of confusion was fatal to both the trademark infringement claims and the related unfair competition and false designation of origin claims because they "are substantively the same as the federal trademark infringement claim and will rise and fall together."  (Recons. Op., RE 36, PageID # 1349.)

and did not interpret the Amended Complaint liberally and draw all inferences in favor of *bella bliss*, the non-moving party.

## ARGUMENT

## I.    APPLICABLE STANDARDS

### A.    This Court Reviews A District Court's Grant Of A Motion to Dismiss *De Novo*.

This Court reviews the District Court's decision to grant little english's motion to dismiss the trademark and trade dress claims *de novo*. *See Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 608-09 (6th Cir. 2009).

### B.    The Federal Rules Of Civil Procedure Require Only Notice Pleading & Inferential Allegations Suffice To Meet This Standard.

The Federal Rules of Civil Procedure require only "a short and plain statement that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The purpose of the complaint is simply to give the defendant "fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The Rules do not require the plaintiff to set out in detail all the facts that support a claim.  *See Twombly*, 550 U.S. at 555, 570 (declining to require "detailed factual allegations," and instead requiring only that a complaint contain "enough facts" to support a claim).  As long as the complaint puts the defendant on notice of the broad issues involved in the case, it should not be

21

dismissed for failure to state a claim. *See Capital Grille Holdings, Inc. v. Historic Hotels of Nashville, LLC*, 448 F. Supp. 3d 819, 833 (M.D. Tenn. 2020) (denying a motion to dismiss a complaint alleging infringement of a service mark where the court was able to derive "a very good idea of the nature of the alleged wrongdoing" simply from reading the complaint).

The Rules require that a complaint contain sufficient factual matter to indicate that a claim is *plausible* on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A party need not show that its claim is probable, nor must a party prove its case at the pleading stage. *See id.*; *accord Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 792 (6th Cir. 2015).[4] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating plausibility, the court must assume that the factual allegations are true and construe them liberally in plaintiff's favor. *See id.* at 679 (explaining that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity"); *Ryan*, 979 F.3d at 525 (in deciding a motion to dismiss, the court is required "to construe the complaint generously toward the plaintiff"). The motion

---

[4] Extensive details are not required for a complaint to survive the motion to dismiss phase. *See generally Bell Atlantic,* 550 U.S. at 570. It is axiomatic that a party need not prove its case at the pleading stage, and this universal principle applies in Sixth Circuit intellectual property cases. *See Gold Crest, LLC v. Project Light, LLC*, No. 525 F. Supp. 3d 826, 848 (N.D. Ohio 2021); *Ford Motor Co. v. Autel US Inc.*, No. 14-13760, 2016 U.S. Dist. LEXIS 85875, at *8 (E.D. Mich. Jul. 1, 2016).

court is required to draw all reasonable inferences from the factual allegations in the non-movant's favor. *See id.* at 524.

"To state a valid claim, a complaint must contain *either direct or inferential* allegations respecting all the material elements to sustain recovery under some viable legal theory." *B. & V. Distrib. Co. v. Dottore Co., LLC*, 278 F. App'x 480, 484 (6th Cir. 2008) (simplified emphasis supplied).  Critically, "the inquiry at the motion to dismiss stage involves '[v]iewing the allegations of the complaint as a whole.'" *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 895, n. 3 (6th Cir. 2019) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)).

## II.   THE AMENDED COMPLAINT SUFFICIENTLY PLEADED A CLAIM FOR TRADEMARK INFRINGEMENT

*bella bliss* adequately pleaded each element of trademark infringement, including—crucially—several factors strongly supporting a likelihood of confusion as to the source of the parties' respective goods.  *bella bliss* even pleaded and provided direct documentary evidence to support its most important allegation: that there was actual customer confusion as to the source of the parties' goods.  This is not a "close call."  *bella bliss* plainly exceeded the standard required of notice pleading as to its trademark infringement claims.

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley*

23

*Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). "The touchstone of liability [in trademark infringement cases] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

When determining whether a likelihood of confusion exists, courts within the Sixth Circuit weigh the following factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *See Frisch's Rest., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion. But due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant." *Innovation Ventures, LLC v. N2G Distrib.*, 763 F.3d 524, 536 (6th Cir. 2014) (simplified), (quoting *Daddy's Junky*, 109 F.3d at 284). This Court has also identified the strength of the senior mark and similarity of the junior and senior marks as crucial *Frisch* factors. *See Maker's Mark Distillery, Inc. v. Diageo N. Am.*, 679 F.3d 410, 424 (6th Cir. 2012) (citing *Gray v. Meijer, Inc.*, 295 F.3d 641, 646 (6th Cir. 2002).

24

"Generally, 'dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most extreme trademark infringement cases, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact.'" *Hensley*, 579 F.3d at 613 (quoting 32 Federal Procedure, Lawyer's Edition § 74:507 (2008)).  It is well established that "the likelihood of confusion is generally a question of fact that is inappropriate to resolve at the motion-to-dismiss stage." *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 687 F. App'x 429, 432 (6th Cir. 2017) (citing *Hensley*, 579 F.3d at 613).  The District Court even recognized as much in its own Decision supporting the Initial Order, stating that determining "such a 'foundational fact' [as the likelihood of confusion] is inappropriate at [the motion to dismiss phase]."  (Initial Or., RE 22, PageID # 1235-36) (citing *Kaldy v. Urshow.tv, Inc.*, No. 2:16-CV-54, 2017 WL 104148, at *3 (E.D. Tenn. Jan. 10, 2017.)

As shown in greater detail below, the fact-heavy and nuanced inquiry into the likelihood of confusion—particularly in this case where the parties have a longstanding and complicated competitive history—can only be adequately resolved with a fulsome discovery process.  *See generally Hensley*, 579 F.3d at 613; *Oaklawn*, 687 F. App'x at 432.

## A.   *Bella Bliss* Explicitly Pleaded Facts Supporting At Least Six *Frisch* Likelihood Of Confusion Factors, Including Actual Confusion

This Court has recognized that evidence of actual consumer confusion is "the best evidence of likelihood of confusion."  *Grubbs*, 807 F.3d at 796.  In *Frisch's*, its seminal

likelihood of confusion case, this Court acknowledged "it is difficult to conceive of a situation where a showing of substantial actual confusion would not result in a legal conclusion of likelihood of confusion." *Frisch's*, 670 F.2d at 648, n.5.  Here, *bella bliss* alleged that instances of actual confusion have already taken place and actually provided the Court with direct evidence of such confusion.  (Am. Compl., RE 11, PageID # 465-66 & Annexed Exhs., RE 11-10 to 11-14.)  For this reason alone, *bella bliss*'s Amended Complaint far surpasses the strength of the allegations contained in countless trademark infringement complaints that survived motions to dismiss within this Circuit.

For example, the Amended Complaint is analogous to the sufficient pleadings in *Golden Star Wholesale, Incorporated v. ZB Importing, Incorporated*. 531 F. Supp. 3d 1231 (E.D. Mich. 2021).  In *Golden Star*, the court denied a motion to dismiss a trade dress infringement counterclaim where the counterclaimant alleged (1) the strength of its brand, (2) the relatedness of the goods, (3) the similarity of the trade dress involved, (4) the use of the same trade channels, (5) actual confusion, and (6) an intent to copy the trade dress, indicating that such allegations "more than adequately plead likelihood of confusion."  *Id.* at 1246.  Here, *bella bliss* also pleaded facts in support of each of these factors related to its trademark infringement claims, including that the counterclaimant in *Golden Star* was one of those few aggrieved enough, like *bella bliss*, to have alleged actual customer confusion at the pleading phase.  The *Golden Star* court found allegations directly tracking *bella bliss*'s to be more than sufficient to state a claim.  *See*

26

*id.* ("These allegations, in sum and viewing them in the light most favorable to [plaintiff], more than adequately plead likelihood of confusion."). As the court did in *Golden Star*, the District Court here should have declined to "improperly [] hold [*bella bliss*] to a summary judgment standard." *Id.*

Furthermore, the products at issue cannot even arguably be considered "unrelated as a matter of law"—i.e., the type of "extreme trademark case" warranting dismissal identified in *Hensley*, 579 F.3d at 613[5]—considering the parties' product similarity is what the District Court believed caused actual customer confusion here. (Recons. Op., RE 36, PageID # 1346-49.) *See also Servpro Intell. Prop., Inc. v. AdvantaClean Systems, Inc.*, No. 17-cv-0258-JPM, 2017 U.S. Dist, LEXIS 226037, at *10 (M.D. Tenn. June 23, 2017) (denying motion to dismiss on the issue of likelihood of confusion "for lack of any evidence suggesting the parties' services are unrelated as a matter of law or any other evidence supporting a finding that this is an extreme trademark infringement case.") Indeed, the Amended Complaint initially survived little english's attempt at dismissal. (Initial Or., RE 22.)

In another example, the court declined to dismiss a plaintiff's trademark infringement claim where the plaintiff provided evidence of the similarity in the marketing channels used, similarity between the services offered and the similarity

---

[5] Notably, the District Court did not address the high bar announced in *Hensley*, not in its Initial Order nor when it later reversed itself, despite the fact that it cited and applied different principles from *Hensley* throughout both of its decisions. (*Id.*)

between the marks, and alleged that defendant copied, adopted and used the marks in connection with the advertising, offering for sale and sale of similar services to its own. *See AMD Southfield Mich. Ltd. P'ship v. Mich. Open MRI LLC*, 337 F. Supp. 2d 978, 983-84 (E.D. Mich. 2004). *bella bliss*'s Amended Complaint contains allegations surpassing those in *AMD Southfield*. Most notably, the court in *AMD Southfield* makes no mention of any allegations of actual customer confusion, yet the court came to the appropriate (*id.* at 981 (outlining the proper motion to dismiss standard, including construing the complaint in the light most favorable to plaintiff and accepting all factual allegations as true)), straightforward conclusion that plaintiff provided sufficient facts to move forward with its trademark infringement claim. *Id.* at 983-84.

Another court concluded that the following allegations were sufficient to plead likelihood of confusion: the marks are similar, the goods are sold to the same audience or market, and "a purchaser could easily mistake [defendant's] product for [plaintiff's]." *Tovey v. Nike, Inc.*, No. 1:12CV448, 2013 U.S. Dist LEXIS 16084, at *15 (N.D. Ohio Feb. 6, 2013) The court held that such allegations met "the low standard in *Hensley* and are enough to survive [a] Motion to Dismiss, leaving the likelihood of confusion issue to summary judgment or a trier of fact." *Id.* Again, the Amended Complaint here contained significantly more and more helpful detail supporting a finding of a likelihood of confusion than did the complaint in *Tovey*. Here, as stated above (*see supra* Section B), *bella bliss* has clearly pleaded at least six relevant *Frisch* factors. *See also Ready*

28

*Capital Corp. v. Ready Capital Corp.*, No. 19-13536, 2020 U.S. Dist. LEXIS 86567, at *8 (E.D. Mich. May 18, 2020) (a complaint adequately states a claim for trademark infringement—specifically, the likelihood of confusion element—where the *Frisch* factors "can easily be found in the complaint's factual allegations").

While little english will likely argue that the District Court was correct to determine the import of the alleged facts, this argument is dead on arrival based upon the application of longstanding notice pleading principles. Applying such principles, a court within this Circuit explained that plaintiff alleged:

> [Defendant] uses [Plaintiff's] The Capital Grille & Design Mark … in commerce in connection with the sale, offering for sale, or advertising of its own services without [Plaintiff's] authorization, in a manner that is likely to confuse, mislead, or deceive the public as to the true source, origin, or sponsorship of [Plaintiff's] services.

*Capital Grille*, 448 F. Supp. 3d at 832. The court there concluded that those allegations, along with a plausible suggestion that the defendant infringes plaintiff's mark, "sufficiently allege[d]" that infringement occurred. *Id.* at 832-33. "[A] detailed description explaining how [d]efendant used the confusingly similar mark, is not required for [the] claim to survive Rule 12(b)(6) scrutiny." *Id.* at 833. Just like the plaintiff in *Capital Grille*, *bella bliss* has alleged that little english uses its mark in a manner that is likely to cause confusion. That is enough. Of course, as explained above, the Amended Complaint does, in fact, include allegations related to how the actual confusion occurred by pleading facts related to at least six *Frisch* factors.

29

The principles requiring liberal denial of motions to dismiss trademark and trade dress claims are universal and not limited to the Sixth Circuit.  Even where a plaintiff "[did] not adequately allege[] actual customer confusion, market convergence, lack of consumer care, intent on [defendant's] part, or planned expansion of product lines," the complaint survived a motion to dismiss for failure to state a claim.  *Vapor Spot, LLC v. Breathe Vape Spot, LLC*, No. CV 15-02110, 2015 U.S. Dist. LEXIS 188008, at *42-43 (C.D. Cal. Sept. 15 2015).  In that case, the court found that plaintiff adequately facts relating to the strength of the mark, the similarity of the goods, and the similarity of the marks, and the court was satisfied.  The court further explained that the issue of "likelihood of confusion is a fact-specific inquiry best left for decision after discovery."  *Id.* at *13-14.  This liberal interpretation is consistent with the Federal Rules and the lenient standards of notice pleading.  *See also Alfwear, Inc. v. Kulkote, LLC*, No. 2:19-cv-00027-CW-JCB, 2020 U.S. Dist. LEXIS 125751, *9-10 (D. Utah Jul. 15, 2020) (explaining that to survive a motion to dismiss, a plaintiff asserting a trademark infringement claim "needs only to allege some facts, that taken as a whole, are likely to cause consumer confusion"); *New NGC, Inc. v. Alpinebay, Inc.*, No. 19 C 3978, 2019 U.S. Dist. LEXIS 236470, at *6 (N.D. Ill. Sept. 26, 2019) (complaint "plausibly alleges a likelihood of confusion" even though it did not contain factual allegations pertaining to every factor in the likelihood of confusion analysis, the allegations did pertain to a number of those factors); *Top Tobacco v. Fantasia Distrib., Inc.*, 101 F. Supp. 3d 783,

792 (N.D. Ill. 2015) (plaintiff's allegations pertaining to some but not all of the relevant likelihood of confusion factors were "sufficient to give the defendant fair notice of what the claim is and the grounds upon which it rests") (simplified).

### B.    The District Court Improperly Determined The Import Of The Facts Underlying The Pleadings At The Motion To Dismiss Phase

In its Reconsideration Opinion, the District Court usurped the fact-finding role of the jury, which is not even appropriate after all the facts have actually been discovered, by dismissing *bella bliss*'s trademark infringement claims on a motion to dismiss. The District Court did so even though it explained that, contrary to little english's primary reconsideration argument, *Hensley* was distinguishable and did not support dismissal. (Recons. Op., RE 36, Page ID # 1344-46.)

Only after rejecting little english's primary argument did the District Court engage in the analysis that resulted in dismissal. Namely, the District Court made the factual determination that it was *only* the similarity of the goods, as opposed to the similarity of the marks or any of the other myriad *Frisch* factors *bella bliss* pleaded, that caused the actual customer confusion that *bella bliss* pleaded in the Amended Complaint. (*Id.*, Page ID # 1346-49.) The District Court's analysis evidences a misapplication of the standards applicable on a motion to dismiss. *See generally Matrixx*, 563 U.S. at 47; *Cahoo*, 912 F.3d at 895, n. 3; *Ryan*, 979 F.3d at 524-25. To arrive at its conclusion, the District Court simply cannot have accepted the allegations of actual confusion and similarity of

the marks at issue as true, as it was bound to do.  For example, the District Court stated that:

> Plaintiff alleged that when the respective trademarks are "seen on a clothing garment tag . . . ***these logos appear nearly identical in nature and are very likely to cause consumer confusion between the brands***" and that "instances of consumer confusion are already occurring between the two companies." [R. 11 p. 23] Further, Plaintiff inserted images of the trademarks into the body of the Amended Complaint (Plaintiff's on the left; Defendant's on the right). [Id. p. 22]

(Recons. Op., RE 36, Page ID # 1347) (emphasis supplied); (*see id.* at PageID # 1347-48 (acknowledging images of trademarks and exhibits showing actual confusion.) Despite all this—and even recognizing that it was required to "constru[e] Plaintiff's factual allegations in a light most favorable to Plaintiff and assuming the facts must be true"—the District Court concluded that these factual allegations can only reasonably support an inference that customers confuse the parties' products, but not that any confusion is caused by the "use" of Defendant's trademark.  (Recons. Op., RE 36, Page ID # 1348-49.) Rather than leave exploration of this factual matter to the discovery process, the District Court made the unwarranted assumption—*in the movant's favor*—that the instances of actual confusion arose solely because consumers confused the

products themselves.[6]  An evaluation of a claim's merits cannot serve as the basis to dismiss a claim on a motion for summary judgment, let alone a motion to dismiss.  *See generally*, *Waggoner v. Battle Creek*, No. 1:12-CV-827, 2013 U.S. Dist. LEXIS 51313, at *14-17 (W.D. Mich. Apr. 10, 2013).  As the court in *Capital Grille* aptly explained, a plausible claim is to be explored during the trial process.  *Capital Grille*, 448 F. Supp. 3d at 833-34.

The question before this Court is not whether the allegations in *bella bliss*'s Amended Complaint are true, but only whether they plausibly describe the wrongdoing that little english is alleged to have committed such that little english is on notice of the claims and the basis upon which they rest.  The application of this concept could hardly be more straightforward.  *bella bliss* owns protectable rights in the *bella bliss* b & Design Marks.  (*See supra*, Section A.1.)  Among other factors, little english infringed that mark by progressively moving its logo closer and closer to *bella bliss*'s in connection with its own similar clothing products and consumers are confused.  (*Id.*)  The discovery and trial processes are the proper places to test the merits of those claims.  For instance, in

---

[6] The District Court erred in evaluating the significance of the similarity of the parties' products.  The similarity of the goods at issue is, indeed, a *Frisch* factor that weighs in favor of the likelihood of confusion.  *See generally*, *Frisch's*, 670 F.2d at 648.  Of course, the similarity of the products is not as important as the similarity of the marks, and certainly not as important as evidence of actual customer confusion.  The District Court found that, not only did the similarity of the products weigh against a likelihood of confusion, it actually was fatal to *bella bliss*'s trademark infringement claim.  Such an incongruous result cannot stand.

*Kaldy*, the court concluded, in line with instruction from this Court, that "factual issues underlie the question of whether a likelihood of confusion exists among consumers," and that a court should not overstep its bounds by resolving such factual issues in connection with a motion to dismiss. 2017 U.S. Dist. LEXIS 3153, at *8 (E.D. Tenn. Jan. 10, 2017).

Accordingly, for all of the reasons stated above, this Court should reverse the District Court's dismissal of Counts II and V of the Amended Complaint for Federal Trademark Infringement and Kentucky Common Law Trademark Infringement, respectively.

## III.   *BELLA BLISS* ADEQUATELY PLEADED A CLAIM FOR TRADE DRESS INFRINGEMENT

On this appeal, the sufficiency of *bella bliss*'s complaint with respect to its trade dress infringement claims turns upon whether *bella bliss* adequately pleaded non-functionality. The District Court failed to apply the proper standards on a motion to dismiss, and found that the Amended Complaint did not put little english on notice of the claims and the grounds upon which they were based. *See generally Twombly*, 550 U.S. at 570. Given the content of the Amended Complaint and the standards applicable for notice pleading, the District Court erred in holding that *bella bliss* had failed to state a claim for trade dress infringement.

To state a claim for trade dress infringement, a plaintiff must allege: (1) that the trade dress is distinctive in the marketplace indicating the source of the good it dresses,

(2) that it is non-functional, and (3) that the trade dress of the competing good is confusingly similar. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *GMC v. Lanard Toys, Inc.,* 468 F.3d 405, 414-415 (6th Cir. 2006).

"Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (simplified). "Trade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id.* at 629 (internal quotation marks omitted).

*bella bliss* properly pleaded its trade dress infringement claim.

### A.    *Bella Bliss* **Adequately Pleaded That Its Claimed Trade Dress Was Non-Functional**

Although there is indeed—as noted by the District Court (Initial Order, RE 22, PageID # 1237)—a statutory presumption that features are deemed functional until proven otherwise, there is no heightened pleading standard related to non-functionality, nor is a plaintiff required to rebut the presumption at the pleading phase. *See*, *e.g.*, *Good L Corp. v. Fasteners for Retail, Inc.*, No. 3:18-cv-00489, 2019 U.S. Dist. LEXIS 53093, at *9 (M.D. Tenn. Mar. 28, 2019).  Indeed, the appearance of a product alone can establish non functionality where "the plain appearance of the [product] shows that the

elements which comprise its trade dress are inherently non-functional." *GMC v. Lanard Toys, Inc.*, 468 F.3d 405, 417 (6th Cir. 2006).

A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Traffix Devices v. Mktg. Displays,* 532 U.S. 23, 32 (2001). This Court has referred to this formulation as the "traditional functionality" doctrine, but regardless of this Court's view on whether a contrasting "aesthetic functionality" doctrine should apply, *see Maker's Mark*, 679 F.3d at 418, the Amended Complaint permits the reasonable inference that its claimed trade dress is non-functional. Again, that is all that is required at the pleading stage. *See generally*, *Ryan,* 979 F.3d at 524-25.

*bliss Blue Color Trade Dress*

Initially, the manner in which the Amended Complaint described *bella bliss*'s use of bliss Blue only admits of the conclusion that bliss Blue is non-functional trade dress.[7] The Amended Complaint alleged multiple times that it uses bliss Blue exclusively as an indicator of source and that it had successfully established secondary meaning as a reliable indicator of source.  (*See supra* Section A.2.)  Critically, *bella bliss* alleged that it "has always utilized its signature light blue color in its logo and overall branding. (Am. Compl., RE 11, PageID # 423.)  It also claimed to have repeatedly used the bliss Blue color as an identifier of the source of its goods on its products, website, social media, and product packaging, inter alia.  (*Id.*, PageID # 433-34.)  That is to say, the Amended Complaint makes clear that the bliss Blue color was used in the manner of a trademark, not, as the Initial Order implies (insofar as it dismissed all of the trade dress

---

[7] While the District Court mistakenly treated *bella bliss*'s product design trade dress in exactly the same manner as it treated *bella bliss*'s claims arising from little english's alleged use of bliss Blue, (Initial. Or., DE 22, PageID # 1237-38), color-based trade dress infringement claims arising from the use of a specific color on product packaging or labeling are of an entirely different nature than ones based upon product designs and colors that appear on or in the products themselves.  *See, e.g.*, *In re Forney Indus.*, 955 F.3d 940, 946 (Fed. Cir. 2020) (explaining that *Qualitex* did not hold that color-based product packaging trade dress required secondary meaning, it only expressly held that secondary meaning was required for color in the product design context).  Indeed, the Federal Circuit and other Federal Courts of Appeals have explained that color appearing outside of the product itself can be inherently distinctive in the appropriate circumstances, unlike in the case of product design trade dress.  *See, e.g., id.* at 946-47; *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1248 (10th Cir. 2016) (holding that "use of color in product packaging can be inherently distinctive (so that it is unnecessary to show secondary meaning)" in appropriate circumstances).

claims together), as a part of any claimed product design trade dress.  (*See* Initial. Or.,
RE 22, PageID # 1237-38.)  To be clear, *bella bliss* has not claimed that its products
claimed as trade dress are bliss Blue, just that its branding and logo are.  (Am. Compl.,
RE 11, PageID # 433-34.)

Here, the bliss Blue color is so detached from the functionality of any *bella bliss*
product (*i.e.*, "use or purpose" or "cost or quality" thereof under *Traffix*, 532 U.S. at 32),
the *only* reasonable inference to be drawn from the Amended Complaint is that the bliss
Blue color is non-functional trade dress.  Indeed, in a leading Federal Circuit case on the
functionality of color claimed as trade dress, the court held that the pink color of
insulation was non-functional because it did not affect the quality of insulation in that
the color used had no effect on the product's ability to regulate a building's temperature.
*In re Owens-Corning Fiberglas Corporation.*, 774 F.2d 1116, 1123-24 (Fed. Cir. 1985).
bliss Blue, since it is not claimed in connection with the color of a product, is obviously
even further divorced from the functionality of any *bella bliss* product than was the pink
color of insulation from *Owens-Corning*.

Relatedly, another court held that plaintiff stated a claim where it alleged that it
had long used a non-functional color to indicate the origin of its products, such that the
color had come to indicate the origin of those products in the mind of the consuming
public.  *Rosta AG v. Lovejoy, Inc.*, No. 1:16-cv-199, 2017 U.S. Dist. LEXIS 129773,
*17-18 (W.D. Mich. Mar. 29, 2017) (simplified). These allegations, combined with a

photograph of the color at issue were sufficient to state a claim for relief that was plausible on its face.  *Id.*  The same result should apply here.

*Product Design Trade Dress*

The factual allegations, thorough descriptions, and photographs included with the Amended Complaint (*see supra* Section A.2.)—particularly the explicit allegations that *bella bliss*'s claimed product design trade dress is the result of artistic choices as opposed to functional concerns—more than adequately pleaded that *bella bliss*'s product design trade dress is non-functional.  As set forth in detail above, *bella bliss* repeatedly and clearly alleged, with respect to its product design trade dress features, that those features are the result of "artistic choices" or are "artistic features."  (Am. Compl., RE 11, PageID # 423, 461-65).  The use of the term "artistic" in this context is sufficient, when construed liberally, as it gives rise to the reasonable inference that these allegedly artistic features are non-functional.

*bella bliss*'s product designs are distinctive because of their ornamentation, not because of their stereotypical features as "children's clothes."  For example, *bella bliss* described its trade dress for its Color-Blocked Gingham Swim Trunks as "a pink gingham waistband, light blue gingham right short leg, and light green gingham left short leg," that the "artistic choices" embodied in that design were replicated in little english's confusingly similar product, and provided the image below depicting the product.



(Am. Compl., RE 11, PageID # 462-63.)    When the image is combined with the Amended Complaint's description of the features, it is plain that the decision to have different colored fabrics for each of the legs is not essential to the use or purpose of the swim trunks, nor does it otherwise serve any function.  *bella bliss* does not attempt to claim the typical elements of swim trunks, only the color scheme and artistic design laid over these typical elements.  Indeed, none of *bella bliss*'s artistic choices even arguably make the garment easier or less expensive to produce (for example, stitching together three different fabrics would almost certainly be more difficult and more expensive than working with a single color fabric), and nothing about the use of three different fabrics should improve the quality or durability of the garment.  So, under any conceivable test for functionality or aesthetic functionality, this trade dress is, at the very least plausibly non-functional.  *See generally Traffix Devices v. Mktg. Displays*, 532 U.S. at 32; *Maker's Mark*, 679 F.3d at 417-18.

This argument applies to all of the allegations regarding *bella bliss*'s claimed product design trade dress, as the claimed features are at least plausibly non-functional from merely viewing and considering the images (*see supra* Section A.2.), but also, *bella*

*bliss*'s repeated allegations that its product design trade dress was the result of artistic choice and that little english intentionally copied the artistic elements of *bella bliss*'s products.  (Am. Compl., RE 11, PageID # 461-65.)  Of course, such plausible inferences are all that is required to survive a motion to dismiss.  *See generally Iqbal*, 556 U.S. at 678.

In one illustrative case, the court explained that that "[t]he *artistic design* of the Plaintiff's [product] is [] protectable by trade dress" while at the same time recognized that "the functional elements of the [product] cannot be protected by trade dress."  *Pan v. Kohl's Dep't Stores, Inc.*, No. 2:12-CV-01063, 2013 U.S. Dist. LEXIS 130616, at *19 (S.D. Ohio Sept. 12, 2013) (emphasis supplied).  The court there poignantly noted that "it need not consider the likelihood of success on the merits of Plaintiff's trade dress infringement claim.  The Court only needs to consider whether a claim has been made upon which relief can be granted."  *Id.* at *17-18.  There, as in the instant action, the court was able to infer that the impression created by the plaintiff's product (a Santa Claus figurine in a snow globe) came from the "ornamental features such as the size and

shape of the figure and the appearance of its accessories" as opposed to "stereotypical Santa elements and the glitter globe." *Id.* at *19-20.[8]

Consistent with the applicable standards, courts within the Sixth Circuit also hold that a simple description or illustration of claimed trade dress can be sufficient to plead non-functionality. For example, one court held that at the motion to dismiss stage, "a simple, and illustrated, assertion of non-functionality shall be sufficient," even while implying that it was not yet satisfied that the design at issue was more than mere decoration or that that it was not essential to the use or purpose of the article or a feature that significantly affects the cost or quality of the article. *Leapers, Inc. v. SMTC, LLC*, No. 14-CV-12290, 2014 U.S. Dist. LEXIS 140622, at *3 (E.D. Mich. Oct. 3, 2014). This is consistent with the standards applicable on a motion to dismiss, specifically, that a party need not prove its entire case at the pleading stage. *See generally Iqbal*, 556 U.S. at 678.

---

[8] Courts have used the term "artistic" interchangeably with or to refer to product features that are non-functional, and eligible for protection as trade dress. The Seventh Circuit noted that "[a]n article with intertwined artistic and utilitarian ingredients may be eligible for a design patent, or the artistic elements may be trade dress protected by the Lanham Act." *ADA v. Delta Dental Plans Ass'n*, 126 F. 3d 977, 980 (7th Cir. 1997) (emphasis supplied). There, the court tellingly used the phrase "artistic" as, essentially, shorthand for protectable via trade dress. *Id.*; *see also Garnier-Theibaut, Inc. v. Castello, 1935 Inc.*, No. PWG-17-3632, 2018 U.S. Dist. LEXIS 83294, at *13 (D. Md. May 17, 2018) (product design was "more evocative of artwork than function," and therefore that plaintiff "ha[d] sufficiently alleged its trade dress is non-functional so as to survive the motion to dismiss stage").

The plain appearance of *bella bliss*'s trade dress, when considered in connection with the accompanying descriptions demonstrates—at the very least allows for the plausible inference—that the claimed trade dress is non-functional. *See generally GMC v. Lanard Toys, Inc.*, 468 F.3d at 417. *See e.g.*, *Good L*, 2019 U.S. Dist. LEXIS 53093, at *9 ("the plain appearance of the product from the photos in the Amended Complaint shows the trade dress is at least arguably non-functional"); *Thomas & Betts Int'l LLC v. Burndy LLC*, No. 2:14-cv-02296, 2015 U.S. Dist. LEXIS 139027, at *8 (W.D. Tenn. Oct. 13, 2015) (the claimed design "is identifiable in the illustrations in the Complaint, which permits the Court to discern the distinctive, asserted non-functional aspects" of the trade dress. *Id.* at *8-9.

### B.    The District Court Did Not Read The Amended Complaint As A Whole Or Resolve Inferences In *Bella Bliss*'s Favor With Respect to Non-Functionality

The District Court dismissed *bella bliss*'s trade dress infringement claims solely on the ground that it failed to allege that its trade dress was non-functional. (Initial Or., RE 22, PageID # 1237.) The District Court explained that it was unable to "distill from the images what the plaintiff claims as protected trade dress or identify what is non-functional about its product design[s]." (*Id.*, PageID # 1238.)

In making its determination, the District Court explained, primarily in a footnote, that it accepted little english's argument that all of *bella bliss*'s non-functionality "relate to the copyright claims, not its trade dress claims." (Initial Or., RE 22, PageID # 1237

& at # 1237 n.4.)  Here, the District Court correctly implied that *bella bliss* pleaded, at least somewhere in the Amended Complaint, that its product designs were non-functional.  As is repeatedly emphasized above, the allegations in a complaint must be read as a whole, and the court must construe the complaint generously toward the plaintiff and draw all reasonable inferences from the factual allegations in plaintiff's favor at the motion to dismiss phase.  *See generally Ryan*, 979 F.3d at 524-25; *Cahoo*, 912 F.3d at 895 n.3.  That is to say, *where* in a complaint the allegations are placed is irrelevant to a court's analysis.  *See id.*; *Cortez v. Prince George's County*, 31 F. App'x 123, 128 (4th Cir. 2022) (rejecting the importance of an allegation's "location in the complaint" as important when reversing a district court's grant of a motion to dismiss, as pleadings should be read to do "substantial justice" and determine claims on the merits) (citing Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1286, pp. 553-556 (2d ed. 1990); *see also Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits")).  Simply put, all of the allegations necessary to plead non-functionality of *bella bliss*'s trade dress are contained in the Amended Complaint.

In any event, as explained above, *bella bliss* did, in fact, specifically assert that its product design trade dress was the result of "artistic choices" and that little english

improperly copied those "artistic features." (Am. Compl., RE 11, PageID # 423, 461-65). To be sure, *bella bliss* also made similar allegations regarding its copyright infringement claims. (*See, e.g., id.*, PageID # 444-46.) However, *bella bliss* also specifically made these allegations regarding its "Mirabelle Swimsuit," "Custom Jungle Print," "Color-Blocked Gingham Swim Trunks," "Shep Bubble" Romper," "Sailor Bubble," and "Eloise Blouse and Contrast Stitching Jumper" (i.e., each of its product design trade dresses). (*Id.*, PageID # 423, 461-65). Thus, for the reasons stated above, *bella bliss* adequately pleaded non-functionality to survive a motion to dismiss.

The case upon which the District Court relied to support its decision, *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 723, 735 (E.D. Mich. 2014), is distinguishable. The court there was concerned not only with whether a complaint sufficiently pleaded that the trade dress was non-functional, but also with whether the claimed trade dress was properly identified at all. *See Mike Vaughn*, 15 F. Supp. 3d at 745-46. Because the plaintiff in that case asserted only vague references as to the nature of its claimed trade dress—such as a "signature trade dress feature" for "goalie pads" and other of its products—the images included in the complaint did not enable the court to determine as an initial matter what specific features were involved in the claim; consequently, the images were of no help in determining whether those features, whatever they might have been, were functional. *Id*. For these reasons, not applicable to the facts here, the court stated that "[t]he images do not rescue plaintiff's trade dress

45

claim because the Court cannot distill from the images what the plaintiff claims as protected trade dress or identify what is non-functional about its product design." *Id.* at 747. It was the lack of articulation of the claimed trade dress features that rendered the images unhelpful, not that images *per se* could not be used to show non-functionality.

Unlike the plaintiff in *Mike Vaughn*, *bella bliss* has clearly articulated, both in the Amended Complaint and now here on appeal, the specific claimed aspects of its trade dress, *in addition* to having included images depicting those features and explaining that each protected element was the result of an artistic choice, as opposed to a functional consideration. (*See supra* Section A.2.) Here, the combination of specific descriptions and provided images depicting the trade dress provides a clear understanding of what the claimed trade dress is. *See Leapers*, 2014 U.S. Dist. LEXIS 140622, at *6 (specifically distinguishing *Mike Vaughn* on these grounds).

*Mike Vaughn* is also distinguishable because, in that case, the plaintiff's own exhibits described its products entirely in functional terms, with statements such as "'the square frontal shape increase[s] the overall blocking surface.'" *Mike Vaughn*, 15 F. Supp. 3d at 747; *see also Leapers*, 2014 U.S. Dist. LEXIS 140622, at *7 (distinguishing *Mike Vaughn* because of the plaintiff's clearly functional descriptions in that case). In dismissing the trade dress claim, the court in *Mike Vaughn* explained that it "cannot evaluate what the plaintiff considers non-functional if the only factual allegations describe the product design's myriad functional purposes." *Mike Vaughn*, 15 F. Supp.

46

3d at 747. That is not the case here. *bella bliss*'s descriptions of its clothing items do not set forth any functional purpose for its claimed trade dress features, but instead discuss them in non-functional terms, such as being the result of "artistic choice."

The court in *Leapers* found that the presence of the images along with the descriptions of the trade dress features satisfied the pleading requirement for non-functionality. *See Leapers*, 2014 U.S. Dist. LEXIS 140622, at *7. The court was clearly skeptical of the plaintiff's claims, noting that "it will be keen to learn how [plaintiff's] design is no more than decoration, that it is neither in any way essential to the use or purpose of the article, nor a feature that significantly affects the cost or quality of the article." *Id.* (internal quotations and citation omitted). Nonetheless, the court properly recognized that "at the pleading stage, a simple, and illustrated, assertion of non-functionality shall be sufficient." *Id.*

**C.    *Bella Bliss* Adequately Pleaded That Its Trade Dress Is Distinctive & That  Little English's Trade Dress Is Confusingly Similar To Its Own**

While the District Court dismissed the trade dress infringement claims based upon *bella bliss*'s purported failure to plead non-functionality (*see* Initial. Or., RE 22, PageID # 1237-38), to be sure, *bella bliss* also adequately pleaded that its trade dress was distinctive and that little english's trade dress was confusingly similar to its own (*i.e.*, the other two elements of a trade dress infringement claim).  (*See supra* Section A.2.)

As to bliss Blue, *bella bliss* specifically alleged that: (1) it has used a signature light blue color in its logo and branding for many years (Am. Compl., RE 11, PageID #

47

423, 433-34, 436); (2) it expended significant time in resources developing precisely the blue color that it wanted to use in said logo and branding, and has used that specific color (bliss Blue) for decades (*id.*, PageID # 433-34, 436); and most importantly (3) because of those efforts, bliss Blue acts as a source identifier for its products, with customers recognizing it as such (*id.*, PageID # 433-34). For the avoidance of all doubt, *bella bliss* explicitly pleaded that "*Bliss Blue* has been used in commerce since at least December 31, 2001, is inherently distinctive and moreover has secondary meaning and acquired distinctiveness under Section 2(f). (*Id.*, PageID # 458-59.) Even if, assuming *arguendo*, that bliss Blue is not or cannot be inherently distinctive, under the liberal standard of notice pleading, repeated allegations such as those outlined above, and those like "Bliss Blue has become synonymous with *bella bliss* and consumers have come to recognize bliss Blue Trade Dress as a source identifier for the *bella bliss* Products" (*id.*, PageID # 434) are more than sufficient to raise the plausible inference that bliss Blue is distinctive via secondary meaning. *See generally Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163 (1995) (color alone may be protectable trade dress "where that color has attained 'secondary meaning' and therefore identifies and distinguishes a particular brand (and thus indicates its 'source')"). All of the alleged facts above, including those of significant advertising and branding expenditures, extended length of use, and the overall strength of *bella bliss*'s brand weigh in favor of a finding of secondary meaning. *See generally Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 762 (6th Cir. 2005).

48

Furthermore, allegations of intentional copying such as "[little english's] new logos appear to utilize the exact shade of bliss Blue" (Am. Compl., RE 11, PageID # 441) and "Little English utilizes bliss Blue throughout its website and social media accounts" (*id.*, PageID # 460) are critical for distinctiveness.  This Court has "long held that evidence of intentional copying shows the strong secondary meaning of a product because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." *Abercrombie*, 280 F.3d at 639.  These allegations, combined with *bella bliss*'s myriad other allegations, including actual confusion, establish that *bella bliss* adequately pleaded that little english was using bliss Blue (or, at least, a color confusingly similar to it) in a confusingly similar way.

Lastly, as to *bella bliss*'s product design trade dress, the Amended Complaint clearly alleges that each claimed design is distinctive, in accordance with the requirement that product design trade dress have secondary meaning to be protectable. *See Samara Bros.*, 529 U.S. at 216.  The Amended Complaint alleged that "*Bella bliss*'s clothing also features signature looks such that consumers can readily identify *bella bliss* as the source.  Each design is carefully crafted, spending extensive time and resources to create signature, exclusive and distinctive looks." (*Id.*, PageID # 423.)  *bella bliss* made similar specific allegations as to its specific claimed product designs including, for example, that the "Mirabelle Swimsuit is a signature of *bella bliss* that is instantly recognizable to customers" (*id.*, PageID # 435) and that little english's accused product

49

were of a "confusingly similar design, a nearly identical replica of *bella bliss*'s unique swimsuit" (*id.*, PageID # 461.)  Furthermore, as to each of its additional claimed designs, *bella bliss* alleged that the protectable elements in its trade dress "are replicated almost identically such that consumer confusion as to the source is highly likely to occur," variously describing its designs and elements thereof as "signature," "custom," "distinctive."  (*Id.*, PageID # 462-65.)  Thus, it is clear that *bella bliss* plausibly pleaded distinctiveness and confusing similarity in support of all of its trade dress claims.

**********************

Accordingly, for all of the reasons stated above, this Court should reverse the District Court's dismissal of Count III of the Amended Complaint for Federal Trade Dress Infringement.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the judgment of the District Court should be reversed, and the Amended Complaint should be reinstated to the extent requested herein, as *bella bliss* adequately pleaded claims for trademark infringement, trade dress infringement, unfair competition, and false designation of origin.

Respectfully submitted,

Dated: June 7, 2022

s/ Jaci L. Overmann
Jaci L. Overmann
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
Fax: (513) 977-8141
Email: jaci.overmann@dinsmore.com

*Counsel for Plaintiff-Appellant*
Bliss Collection, LLC, d/b/a bella bliss

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Brief of Plaintiff-Appellant Bliss Collection, LLC D/B/A bella bliss was served upon all counsel of record via the Court's ECF system on June 7, 2022.


Dated: June 7, 2022                     /s/ Jaci L. Overmann
                                        Jaci L. Overmann

                                        Counsel for Plaintiff-Appellant
                                        Bliss Collection, LLC, D/B/A bella bliss

## <u>CERTIFICATE OF COMPLIANCE WITH FED R. APP. P. 32(a)(7)</u>

I hereby certify that I am counsel for Plaintiff-Appellant Bliss Collection, LLC, D/B/A bella bliss, and that the foregoing Brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure 32(A)(7)(B).

This brief contains 12,931 words, excluding the parts of the brief that are exempted under Fed. R. App. P. 32(A)(7)(B)(iii).

Dated: June 7 , 2022                      s/ Jaci L. Overmann
                                          Jaci L. Overmann

                                          Counsel for Plaintiff-Appellant
                                          Bliss Collection, LLC, D/B/A bella bliss

# ADDENDUM

## Designation of Relevant District Court Documents

Plaintiff-Appellant, Bliss Collection, LLC, d/b/a *bella bliss* hereby sets forth its

designation of relevant district court documents as required by Sixth Circuit Rule 30(g).

| RE Number | Description of Document | PageID |
|---|---|---|
| 1 | Complaint | 1-49 |
| 11 | Amended Complaint | 420-480 |
| 14 | Defendant's Motion to Dismiss | 971-974 |
| 20 | Plaintiff's Opposition to Motion to Dismiss | 1181-1205 |
| 21 | Defendant's Reply in Further Support of Motion to Dismiss | 1206-1221 |
| 22 | Order Granting, In Part, Defendant's Motion to Dismiss | 1222-1240 |
| 23 | Defendant's Answer & Counterclaim | 1241-1263 |
| 28 | Defendant's Motion to Reconsider | 1284-1290 |
| 33 | Plaintiff's Opposition to Defendant's Motion to Reconsider | 1313-1325 |
| 34 | Defendant's Reply in Further Support of Motion to Reconsider | 1326-1330 |
| 36 | Opinion on Reconsideration Motion | 1336-1350 |
| 39 | Plaintiff's Notice of Appeal | 1466-68 |
| 53 | Magistrate Judge's Initial Report & Recommendation Regarding Attorneys' Fees Dispute | 1561-1572 |